### ISAAC P. VAN DOREN

#### *v.*

### WILLIAM VAN DOREN et al.

A master, who sold certain lands under partition proceedings in chancery,. was ordered to deposit a certain part of the proceeds (about $5,500) in a designated bank in his name as master, pending the discovery of the beneficiaries entitled thereto. He deposited the amount, in that bank, in 1858, but in his own name, and it thereby became mingled with his individual account, and was drawn out by him from time to time until his death in 1883, his balance sometimes not exceeding $500.—*Held*, that he was liable for interest, to be computed at the legal rate, upon whatever portion of the fund he thus withdrew, to be ascertained by striking monthly balances of his bank account during his lifetime, and that his executrix was similarly liable for interest. accrued since his decease.

Van Doren *v.* Van Doren.

On exceptions to master's report.

*Mr. John H. Leupp,* for the exceptant.

*Mr. B. F. Randolph* and *Mr. Wm. Throckmorton,* for the executrix of the deceased trustee.

PITNEY, V. C.

This was a bill filed in 1856 for partition of the lands of an intestate decedent whose heirs were collaterals, and were numerous and several of them difficult of ascertainment. The court ordered the lands to be sold, and, after sale, made a decree (dated March 28th, 1858) of partial distribution, and in it ordered that a certain fraction of the proceeds of sale, which proved to be five thousand five hundred and thirty-one dollars and forty-three cents ($5,531.43), should be retained by the master who made it, and that he " deposit it in the Freehold Banking Company in his name as *master to sell the real estate of which Garret Van Doren died seized,"* to await further proofs as to the persons who might be entitled to it.   Mr. Bennington F. Randolph was the solicitor

---

NOTE.—Although a master is liable for neglect, he is not amenable to a suit for an error in judgment in taking a security on a sale of land under an order of the court, if he follows the directions of the court, *Fenwick* v. *Gibbes, 3 Desauss. 629;* or if the court gives no directions, *Thompson* v. *Wagner, 3 Desauss. 94;* nor is he liable for subsequent depreciation in the value of the security, if he is not negligent, *Wightman* v. *Gray, 10 Rich. Eq. 518; Peck* v. *James, 3 Head 75;* nor for the failure of the bank wherein he deposited the funds, *Gill* v. *Barbour, 80 Va. 11; Van Wyck* v. *Norris, 15 S. C. 241;* see *McBride* v. *Bank of Salem, 28 Barb. 476.*

*Query.* Whether he would be liable for their loss by theft, *Matter of Bostick, 2 Ired. Eq. 327.*

A master, while acting as receiver of a trust estate (which the court had ordered to be invested in stock), suffered $11,500 to lie unproductive for three months and twenty days; he stated that he had waited in order to invest it in stock bearing six per cent. interest, but not succeeding loaned it on that interest.—*Held,* that, his successor having approved the loan, he was not liable for the loss of interest while the fund was lying idle, *Arthur* v. *Master, Harp. Eq. 47;* nor is he liable for loss through delay, if the beneficiaries assent thereto, *Turpin* v. *McKee, 7 Dana 305.*

Where a master borrowed money, and, to secure its repayment, hypothe-

Van Doren *v.* Van Doren.

of the complainant, and had already made extensive inquiries relative to the ownership of these moneys. These inquiries have been continued since the order of deposit aforesaid, but no proceedings were had in the cause in court since 1872, and the existence of the fund was unknown to the present officers.

The master died in 1883. In 1888 a person claiming to be entitled to a share in this fund presented a petition to the court setting forth the ground of her claim and praying an inquiry. By this means the existence of this fund and its exceptional situation were brought to the attention of the chancellor, and he promptly ordered the executrix of the deceased master to pay the principal of the fund into court, and upon a suggestion that the master had not deposited the fund as directed by said order, but had used it for his private purposes, ordered an inquiry by a master as to the amount of the fund, and what interest, if any, should be accounted for by said executrix.

The proofs before the master on the reference showed that the deceased master never deposited the money in question to his credit as master, as directed by the order of March 28th, 1858, but did deposit it to his own individual credit in the Freehold Banking Company's bank, thereby mingling it with his own

cated certain stock which he held as master, and the character of his holding appeared on the certificates, the lender was decreed to surrender them to the persons entitled, and to account for the dividends he had received thereon, *Simons* v. *Bank, 5 Rich. Eq. 270;* so where he loaned the trust money to his individual debtor, deducting the amount of his own claim therefrom, *Mulligan* v. *Wallace, 3 Rich. Eq. 111.*

Where a master had given a bond, his sureties were held liable for his failure to pay over moneys received by him from a sale in partition under the court's direction, *People* v. *McLain, 3 Bradw. 27.*

Under what circumstances a master may be sued, *Spires* v. *Ordinary, 11 Rich. 578; Higgins* v. *Wright, 43 Barb. 461;* and what must be proved in a proceeding against him to compel him to account for the proceeds of lands sold by him, *Ex parte Stanyarne, Harp. Eq. 20; Ex parte Perry, Harp. Eq. 50.*

Where a commissioner, ordered by a court to sell slaves, stated in a letter that he had taken a bond and mortgage for them, his non-production of the securities, or of the money due thereon, was held sufficient to charge him with the amount, *Heriot* ads. *McCauley, Riley's Ch. 19.*

If ordered to sell for cash he is presumed to have received it, and is accountable for the amount, *Ellis* v. *Carr, 1 Bush 527.*—Rep.

money, and that he drew on it from time to time as his own money, sometimes drawing his balance down to less than $500, and sometimes having a balance to his credit of more than the fund in question.

Upon these facts the master reported simply, " that the amount of money left in the custody of said master belonging to the fund in said cause was five thousand five hundred and thirty-one dollars and forty-three cents, and the same was held by him until his death, on or about March third, 1883; and I further report that no interest on said sum of money should be accounted for."

To this report the petitioner has excepted, on the ground that interest should have been charged.

The learned master who made the report supported it by an opinion stating his reasons therefor. From this opinion it does not appear that he came to the conclusion that, as a matter of fact, no interest was ever received upon this money or other profits derived from its use by the deceased master or his executrix since his decease. If he had done so, I think, for reasons hereafter to be stated, that such conclusion could not be sustained upon the evidence produced before him. His conclusion, as stated in his opinion, was, " that the duties and functions of the master in respect to the fund were ministerial and not fiducial. That the liability of the master for misbehavior or neglect was to the court that appointed him, and not to the parties to the suit; and that for any neglect or misbehavior of the master, his executrix [the master being dead] is not accountable." And he came to the conclusion that the master was not in any sense a trustee of this money, and, if not a trustee, then that he was not liable to be called upon to account for its earnings while in his custody.

At the hearing upon the exceptions it was not contended by the counsel for the executrix that, if an ordinary trustee had dealt with trust money in the way the deceased master did with the fund in this case, he would not be liable to be called upon to account for more or less of interest, but exemption from such liability was claimed for a master of this court on account of his office, and reference was made in support of this position to the usage and practice in the English court of chancery during the

early part of the last century, when the masters were allowed to loan out the money of suitors in their hands and to speculate with them, and to keep the earnings and profits for their personal benefit.

I am unable to yield to this claim so urged by the counsel, or to agree with the learned master in his conclusions. I do agree with the learned counsel of the executrix, that a master of this court is an assistant of the court, acting sometimes in a judicial and sometimes in an executive capacity, and in that way a part of the machinery of the court, and that he is responsible to the court, and, in a sense, to the court alone, for his conduct. (*"Introduction to Hoffman's Masters in Chancery."*) Money in the hands of a master is in the custody of the court quite as much as if it were in the hands of the clerk. And it follows inevitably, that if a master may rightfully use funds of suitors in his hands, and make a profit by such use, without accounting for it to the court for the benefit of such suitors, then the clerk of the court may rightfully make use and profit of all the funds in the court and put the gains in his own pocket, a proposition too monstrous to be entertained for a moment. Nor is it true that the practice alluded to as prevailing in the early part of the last century ever became fastened on the English system. On the contrary, its exposure led to its extinction, and to the resignation, disgrace, impeachment and punishment by fine of that otherwise great judge, the Earl of Macclesfield. And I am not aware that it ever had any foothold in New Jersey. Certainly such a practice ought not at this day to receive the least countenance from any court.

Nor do I agree with the learned master in his conclusion, that a master of this court who is the custodian, by order of the court, of money belonging to parties to suits, or others, is not a " trustee " in the true sense of the word. He is entrusted with the custody of money belonging to another, *with* the *power* but *without* the *right* to dispose of it for his own benefit; and therein lies the essential element of a trust. A master directed to sell lands and receive the proceeds in any case is, in effect, a trustee of that fund, especially appointed in that case.

But the determination of the question in hand does not depend upon a question of names—the proper name to be applied to the custodian of the fund—nor does it necessarily depend upon whether, and to what extent, that custodian is liable to punishment for misconduct as an officer of the court in the matter of its custody. It depends rather on the question whether or not that fund has actually or presumably earned any increase during that custody. If it has, it follows inexorably that such earning and increase, in whose hands soever found, belong to and must be added to the principal sum. This is the fundamental principle to be applied in most of these cases. Interest is not ordi· narily charged against trustees as a punishment for a breach of trust of this kind, in the absence of a duty to invest, but rather as a mode of ascertaining the amount of profit earned by the fund. It follows that if the deceased master had deposited the fund in the designated bank in his name as master, strictly according to the terms of the order, and had left it there intact during all these years, and had exacted from the bank interest for its use, that interest would have belonged to the fund and not to the master, though the court might think him guilty of no misconduct in exacting it.

The principle alluded to was stated by Chief-Justice Ewing in *Voorhees* v. *Stoothoff, 6 Hal. 145, 148,* in these words: "The fundamental principle in regard to a trustee, whether executor, or administrator, or guardian, or in cases of an ordinary nature, is, that he shall derive to himself no gain, benefit or advantage by the use of the trust funds. *Whatever of .profit may be made or may accrue shall belong to and become parcel of the estate.*"

This language was cited and adopted by the court of appeals in *McKnight* v. *Walsh, 9 C. E. Gr. 498, 510.* That court, in that case, also adopted the language of Lord Hatherly in a recent English case, to the effect that the court does not proceed in such cases on the basis of punishment, but "proceeds upon this principle that he" [the accountant] "either has made or has put himself in such position as that he is presumed to have made interest" &c. If, then, the principle acted upon by the court be that the earnings of a fund in the hands of an ordinary custo-

dian belong to and. go with the fund, can it for a moment be contended that such principle does not apply when the fund is in the custody of an officer of the court itself?

Nor, in my judgment, is there any strength or value in the notion, that the liability of the master is to the court and not to the parties, and, being dead, he cannot be proceeded against. The answer, if any be needed, to this contention, is obvious. This proceeding is essentially a proceeding by the court, and may be treated as if taken by the court of its own motion. In fact, it is not saying too much to presume that the court would have acted entirely of its own accord, had the peculiar facts of this case been brought to its attention by a person not claiming to be interested in the fund. The owners of this fund are not yet determined. There is merely a claim set up for a small fraction of it, and the present proceeding is essentially by the court as the guardian and trustee of the, as yet, unknown and unascertained owners. It is calling on a personal representative to account for moneys which it entrusted years ago to her testator, and, in so doing, I think it should and must ask her to account for all the earnings of those moneys in the hands either of her testator, or, since his death, in her own hands.

I think the exception must be allowed.

The question as to what rate of interest should be charged, and for what period, was elaborately discussed at the hearing, and it may be well to express the conclusion, in that matter, at which I have arrived, upon the facts as now presented, for the guidance of the master in the further proceedings which must be had before him.

The counsel for the executrix contended that no more interest should be charged than would have been earned if the sums from time to time drawn from his bank account and used by the deceased master, so far as they at any time reduced his bank balance below the sum entrusted to him, had been deposited in this court. Counsel referred to the fact that the present system of guarding the funds in court by depositing them in bank in such manner that they cannot be drawn out except upon the check of the clerk, countersigned by the chancellor, was intro-

Van Doren *v.* Van Doren.

duced as lately as 1856, and that prior to 1870 no interest was ever allowed by the depository bank upon the funds so deposited, and that from 1870 to 1878 four per cent. interest was allowed, and since 1878 three per cent. only. And counsel claims that if any charge of interest be made, these rates, and these rates only, and for the period covered by them, should be charged in this case.

But it is manifest that the application of this rule will not accomplish the object in view, namely, to ascertain the actual earnings of this fund in the hands of the master.

On the other hand, it is contended by the counsel of the petitioner, that the deceased master, having failed to deposit this money to a special account, as directed by the order of 1858, and having mingled it with his own moneys in bank, is liable, at least, to full simple interest during the whole period.

It is undoubtedly true that this conduct on the part of the master, according to all the authorities, charges him *prima facie* with full interest. Upon proof of the bare fact of failure to deposit to the special credit, as directed by the court, the presumption of fact is, that he made use of it for his own purposes, and that he gained by such use at least lawful interest on the fund. But this is a mere presumption of fact, and may, I think, be rebutted and overcome in this case, in a measure at least, by proof that he did not, in point of fact, make use of the money for his personal benefit, and did not derive any benefit from it. In ascertaining the amount to be charged for interest, we must bear in mind that we are not seeking to punish the master, but to ascertain how much money he presumably gained by the use of this fund in the manner and to the extent that he did actually use it; that there was here no duty or obligation to invest it; that it was not expected that the fund would earn anything, and that if it had been deposited and left with the bank strictly according to the terms of the order, nothing would have been earned by it; and that, although the presumption for some purposes may be that the master had notice of the terms of the order of distribution, yet there is no proof of actual notice; that the decree itself is very long, and it may well have happened, as

Van Doren *v.* Van Doren.

suggested by counsel, that the master never did see it, but paid out the moneys, so far as he did pay them, on a statement or abstract of the decree furnished by counsel, and that his attention was not called to that part of the decree which required the special deposit. The high character of the master renders it improbable that he would have knowingly disregarded the order of the court. I think, then, considering all these matters, that the executrix may, and, in a measure, has, on the case as it now stands, overcome the presumption of beneficial use of this fund by showing that it was deposited to the individual credit of the master in the proper bank. And if it appeared that an amount equal to the fund had at all times been kept to that credit, I should feel disposed, in the absence of any evidence that the bank had paid the master any interest on it, or allowed him any substantial pecuniary advantage by reason of its presence to his credit, or that he had actually derived any such benefit, to advise that there should be no charge for interest.

It is undoubtedly a rule, very properly acted upon in many cases, that where a trader, engaged in active business and having the usual dealings with his bank by way of loans &c., deposits trust money to his individual credit in bank, mixing it with his own moneys kept there for the purpose of his trade, he is chargeable with full interest on the trust fund, although he proves that he kept constantly to his credit a balance equal to the amount of the fund. The trader, under such circumstances, is charged with interest upon the strength of the well-known fact, that a person so engaged in trade derives a positive pecuniary benefit from the balance so to his credit in the matter of mercantile credit and right to accommodation resulting from keeping such a balance with his bankers. *Treves* v. *Townshend, 1 Bro. C. C. 384; In re Hilliard, 1 Ves. Jr. 90; Rocke* v. *Hart, 11 Ves. 58; Sutton* v. *Sharp, 1 Russ. 146; Williams* v. *Powell, 16 Jur. 393.*

But the deceased master was not engaged in trade, and a benefit of the character above pointed out is therefore not to be presumed in this case. I have examined the copy of the bank account of the deceased master and find nothing in it to show that the rule applied to traders should be applied in this case. I

see nothing to indicate that he made any pecuniary gain or benefit by the presence of the fund to his credit. I therefore think that, on the case as now presented, justice will be done by charging interest on the amounts which the books of the bank show that the deceased master's account was from time to time short of the sum ordered to be deposited. To that extent he actually used the trust moneys, and must be presumed to have derived a benefit from such use equal to the interest on the amount used.

The copy of the account produced shows that it was regularly balanced by the officers of the bank on certain stated days. For the first few years of the period it was done every quarter-day, commencing April 1st; and afterwards, every four months, commencing January 1st. The dates of both deposits and payments by check or note are given, so that balances can be struck as often as may be desirable, in order to arrive at the true average. I suggest the first day of every month for striking balances. In ascertaining the true average, however, wherever it appears that the balance is more than the trust fund of $5,531.43, such excess must not be counted. The account should be carried on after the death of the master until the date of the payment into the court, upon the same principle of charging interest on whatever sum the bank account of the executrix was short of the amount of the trust fund.